**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA          )
                                  )
          v.                      )
                                  )     Criminal No. 21-408
EDWIN WILLIAMS,                   )
                                  )
                Defendant.        )

**MEMORANDUM OPINION**

I.      **INTRODUCTION**

Presently before the Court are three suppression motions filed by Defendant Edwin Williams: Motion to Suppress Evidence; Motion to Suppress Statements; and Motion to Suppress Evidence Obtained From Search Warrants (Docket Nos. 33-38).  The Government filed an omnibus Response in opposition to the Motions, and the Court held a hearing and oral argument on May 31, 2022, the official transcript of which was filed of record.  (Docket Nos. 44, 49, 52). At the Court's direction, on August 1, 2022, the parties submitted post-hearing proposed findings of fact and conclusions of law relative to Defendant's Motions.  (Docket Nos. 54, 55).  The Government filed a response to Defendant's post-hearing submission on September 1, 2022, (Docket No. 56), and the Court then took the matter under advisement.  After careful consideration of the parties' submissions, the transcript of the proceedings and the credible evidence of record, and for the following reasons, Defendant's Motions will be denied.

II.     **BACKGROUND**

    **A.  Procedural History**

On September 21, 2021, Defendant was charged in a one-count Indictment with possession

with intent to distribute a quantity of a mixture and substance containing a detectable amount of fentanyl and a quantity of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), for conduct occurring on or about March 25, 2021.[1]  (Docket No. 1).  Defendant subsequently was arraigned and pled not guilty to the charges on September 22, 2021.  (Docket Nos. 12, 13).

Following Defendant's arraignment, he requested and was granted a number of extensions of time to file pretrial motions.  Ultimately, Defendant filed the three suppression Motions on February 11, 2022.[2]  (Docket Nos. 33, 35, 37).  The Government sought, and was granted, an extension of time to respond to Defendant's Motions until April 27, 2022, because the parties were attempting to negotiate a resolution of the case.  (Docket Nos. 42, 43).  On April 12, 2022, the Government filed an omnibus Response to Defendant's Motions, to which Defendant filed a Reply on April 25, 2022.  (Docket Nos. 44, 46).  As stated, on May 31, 2022, the Court held a hearing as to Defendant's Motions to suppress evidence and statements and oral argument regarding his challenge to the search warrants, (Docket Nos. 49, 52), all supplemental briefing is complete, and the matter is now ripe for disposition.

**B.  Facts**

As clarified at the hearing and discussed in more detail below, at issue here is whether a

---

1       Defendant also is on federal supervised release from a prior conviction for conspiracy to distribute and possess with intent to distribute less than 100 grams of heroin at Criminal No. 14-129, which originally was assigned to the Honorable Joy Flowers Conti.  Based on the events that gave rise to the charge in this case and another then-pending state case, on April 1, 2021, the Probation Office filed a petition alleging that Defendant had violated multiple conditions of his supervised release and requested the issuance of a warrant.  (Crim. No. 14-129, Docket No. 858). Judge Conti issued a warrant and ordered that no bond be set.  (Crim. No. 14-129, Docket No. 859).  Defendant's case at Criminal No. 14-129 subsequently was reassigned to this member of the Court.  (Crim. No. 14-129, Docket No. 892).

2       Defendant also filed five other pretrial motions relative to disclosure of *Brady/Giglio* and Jencks materials, production of additional discovery, Rule 404(b) notice, and preservation of rough notes, (Docket Nos. 25, 27, 29, 31, 39), which the Court ruled on in an Order dated September 27, 2022.  (Docket No. 57).

*Terry* frisk of Defendant was based on reasonable suspicion, and whether the police officer exceeded the scope of the *Terry* frisk when he seized a plastic bag containing cocaine from Defendant's pocket.[3]   At the suppression hearing, the Government called Penn Hills Police Department Officer Dustin Hess, who testified concerning the events bearing on the matters at issue and was subject to cross-examination concerning same.  (*See* Docket Nos. 49, 52).   The Government also entered eight exhibits into evidence.  (*See id.*; Docket No. 49-1).

At a hearing on a motion to suppress, it is well-settled that "the credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge."  *United States v. Richardson*, 501 F. Supp. 2d 724, 734 (W.D. Pa. 2007) (citations omitted).   To that end, as finder of fact, the Court "is free to accept or reject any or all of a witness's testimony."  *United States v. Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005) (citation omitted).   In this Court's estimation, based on Officer Hess' demeanor and testimony in response to the questioning of the attorneys at the suppression hearing, he offered credible testimony concerning the events that unfolded on the date in question, despite the defense's efforts to impeach him.  *See United States v. Garcia*, 521 F. App'x 71, 73 (3d Cir. 2013) (quoting *Anderson v. City of Bessemer,* 470 U.S. 564, 575 (1985) (" '[w]hen findings are based on determinations regarding the credibility of witnesses ... for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.' ")).   In addition, Officer Hess presented as an experienced officer given that he has been employed by the Penn Hills Police Department for seven years, and previously served as a police officer with West Homestead

---

3        In the Motions as filed, Defendant challenged all aspects of his traffic stop, frisk, arrest, search incident thereto, and subsequent search warrants for his cell phones.  (*See generally* Docket Nos. 33, 34, 37, 38).  Defense counsel clarified at the hearing that "[t]he crux of [Defendant's] suppression argument is his pat-down search was illegal" and therefore "everything that follows is fruit of the poisonous tree."  (Docket No. 52 at 27, 28).

Borough and the University of Pittsburgh for two years each.  (Docket No. 52 at 10, 11).  Further, Officer Hess has received training specific to narcotics investigations and traffic stops, and he has acquired significant experience in these areas, as he has conducted "hundreds, if not more" traffic stops and made "[i]n the hundreds" of narcotics arrests during his eleven-year career.  (*Id.* at 11-12).

Turning to the events of March 25, 2021, at approximately 1:40 a.m., Officer Hess was on stationary patrol in a marked police vehicle monitoring traffic for motor vehicle violations at the intersection of Frankstown Road and Coal Hollow Road.  (Docket No. 52 at 12-13).  Officer Hess testified that the location is a high crime area, and he had made several drug and firearm related arrests in the immediate vicinity.  (*Id.* at 13).

While on stationary patrol, Officer Hess observed a black Lincoln MKZ with heavily tinted windows, which prevented him from seeing inside the vehicle from his position.  (Docket No. 52 at 13).  As Officer Hess explained, window tint which prevents him from seeing occupants inside of the vehicle is a violation of the Motor Vehicle Code.  (*Id.* at 14).  Given his observation, Officer Hess ran the registration plate of the vehicle as it passed his location, and he learned that the vehicle's owner, Edwin Williams, Jr., had a suspended driver's license.  (*Id.* at 14, 32).  Officer Hess testified that he had previously stopped Defendant driving the same vehicle, and he also was involved in a vehicle pursuit with Defendant.  (*Id.* at 14).  In addition, Officer Hess was familiar with Defendant's criminal history and knew that he had several drug and firearm related arrests in the past.  (*Id.* at 15).

After observing the dark window tint and learning that the vehicle was registered to an individual with a suspended license, Officer Hess followed the vehicle and ultimately conducted a traffic stop on Coal Hollow Road.  (Docket No. 52 at 15-16, 32).  The events that unfolded at the

4

traffic stop were captured on Officer Hess' body camera and the dash and vehicle cameras in his patrol vehicle. (*Id.* at 16). Officer Hess testified regarding Government Exhibits 3A, 3B, 3C and 3D, explaining that Exhibit 3A is the dash camera from his patrol vehicle, Exhibit 3B is his body camera, which he wears on a plate slightly underneath his left breast pocket, Exhibit 3C is the patrol vehicle's dash camera with a wider view, and Exhibit 3D is the camera in the back seat of his patrol vehicle. (*Id.* at 16-17, 32-33). As Officer Hess testified, Government Exhibits 3A, 3B, 3C and 3D are true and correct copies of the body camera and the dash and vehicle camera footage from March 25, 2021. (*Id.* at 17).

Officer Hess testified that he approached the vehicle's passenger side for officer safety reasons and recognized Defendant as the driver of the vehicle. (Docket No. 52 at 18). Despite the dark window tint, Officer Hess explained that he was able to see inside the vehicle as he approached because he had turned on his patrol vehicle's "takedown light," which is a high-powered spotlight in the center of the patrol bar, and he also held his flashlight above his shoulder. (*Id.* at 19; Ex. B at 00:38 - 00:49).

When Officer Hess arrived at the right side of the vehicle's bumper/trunk area, he saw Defendant's right hand through the seats, and he observed Defendant quickly slip a clear plastic bag containing a white substance into his right pants pocket. (Docket No. 52 at 19-20, 33, 40, 41). In light of his training and experience, Officer Hess knew that narcotics typically are packaged in clear plastic bags and he thought that the white substance may have been some type of narcotic. (*Id.* at 20). As Officer Hess was approaching the vehicle, he also observed Defendant's left hand reaching down toward the door on his left side, but Officer Hess could not exactly see what Defendant was doing. (*Id.* at 20-21, 37).

Officer Hess alerted Defendant to his presence by knocking on the vehicle's window, and

he asked what Defendant had put in the door. (Docket No. 52 at 21). Officer Hess testified that Defendant continued to reach down with his left hand, but he could not see what Defendant was doing. (*Id.*). Officer Hess advised Defendant multiple times to place his hands on the steering wheel, but Defendant did not immediately follow those commands. (*Id.*; Ex. B at 01:02-01:16). As Officer Hess was concerned that Defendant may have been concealing or retrieving a weapon, he drew his firearm and again ordered Defendant to place both hands on the steering wheel. (Docket No. 52 at 21; Ex. B at 01:30-01:48). Officer Hess testified that Defendant did not fully comply with the order to place his hands on the steering wheel even after he drew his firearm. (Docket No. 52 at 21-22; Ex. B at 01:33-01:46). Considering his training and experience, Officer Hess remained concerned that Defendant may have a firearm, and he called for back-up assistance. (Docket No. 52 at 22).

After back-up arrived, Defendant was removed from the vehicle. (Docket No. 52 at 22). As Officer Hess attempted to detain Defendant, he reached toward his waistband area with his right hand. (*Id.* at 22, 38; Ex. A at 03:28-03:32; Ex. B at 02:18-02:30). After Defendant was placed in handcuffs, Officer Hess "*Terry* frisked for weapons."[4] (Docket No. 52 at 22, 35; Ex. B at 02:47-03:01). When Officer Hess patted Defendant's left pocket, he felt a large object but determined that is was not a weapon. (Docket No. 52 at 23, 36). Officer Hess next patted

---

[4]     The Court notes that it was permissible for the police to handcuff Defendant while Officer Hess performed the *Terry* frisk. *See United States v. Foster*, 891 F.3d 93, 107 (3d Cir. 2018) ("Placing [a defendant] in handcuffs while confirming that he was not armed and dangerous was not outside the scope of a reasonable *Terry* stop."). Furthermore, the Court disagrees with Defendant's contention that Officer Hess' testimony is "suspect" because he testified at a state preliminary hearing relative to the events in this case that he conducted the pat-down of Defendant prior to placing him in handcuffs. (*See* Docket No. 54 at 14, n.1). The Court has reviewed what appears to be an unofficial transcript of the state preliminary hearing attached to Defendant's Proposed Findings of Fact and Conclusions of Law, in which Officer Hess testified as follows: "I believe [Defendant] was [T]erry frisked, I pulled the bag of suspected cocaine out of his pocket and then he was handcuffed. I had back-up there, I don't think I handcuffed him before. I believe I [T]erry frisked him, **but its** [sic] **all on my body camera that will show everything.**" (Docket No. 54-1 at 11) (emphasis added). Officer Hess testified as to his recollection, but referred state defense counsel to the body camera footage for the sequence of events. The Court finds that Officer Hess' candid explanation on this point bolsters, rather than undermines, his credibility.

Defendant's right pocket and felt a small amount of a powder substance in his right change pocket, without manipulating it.[5]  (*Id.* at 23, 41-42).  As Officer Hess testified, he previously had observed Defendant slip a clear plastic bag in his right pocket.  (*Id.* at 23).  Officer Hess then removed from Defendant's pocket a clear plastic bag.  (*Id.*).  Based on Officer Hess' training and experience, he believed that the substance in the bag was a narcotic, and, more specifically cocaine, given that it was white powder packaged in a plastic bag.  (*Id.* at 23-24).

After Officer Hess removed the plastic bag from Defendant's pocket, he patted Defendant's right pocket again to verify that he had no weapon, found a small amount of marijuana, completed the pat-down and then placed Defendant under arrest.  (Docket No. 52 at 24-25).  Officer Hess subsequently searched Defendant more thoroughly incident to arrest and recovered from his person $1,638 in United States currency, as well as four bundles and two bricks of suspected heroin from his groin area.  (*Id.* at 25, 29-30).

When Defendant was taken to Officer Hess' patrol vehicle, he asked if Officer Hess could get his cell phones for him, and Officer Hess replied that he would do so.  (Docket No. 52 at 26; Ex. B at 04:32-04:46).  At that point, Officer Hess had not asked Defendant any questions about his phones.  (Docket No. 52 at 26).  After Defendant was placed in the back seat of the patrol vehicle alone, he stated, "f*ck, man."  (Ex. D at 14:15).

Officer Hess conduced an inventory search of Defendant's vehicle, during which he retrieved the cell phones and placed them on the seat inside the vehicle.  (Docket No. 52 at 26).  Officer Hess testified concerning Government Exhibit 6, which is the Penn Hills Police Department inventory search policy.[6]  (*Id.* at 27).  Officer Hess also testified as to Government

---

5       As Officer Hess testified on cross-examination, crime lab testing revealed that the amount of powder cocaine recovered in the bag was .3 grams, which he described as a small amount.  (Docket No. 52 at 34).

6       At that point in the hearing, defense counsel clarified that Defendant is not challenging recovery of the cell

Exhibit 7, which is an impound record identifying items recovered from Defendant's vehicle during the inventory search. (*Id.* at 28-29). Given that suspected heroin was recovered from Defendant's person when he was searched incident to arrest, the police seized his cell phones following the inventory search of the vehicle. (*Id.* at 30, 37). No weapons or narcotics were found in the vehicle. (*Id.* at 37). Defendant then was transported to the police station, and Officer Hess later obtained search warrants for the two cell phones, which were admitted in evidence at the hearing as Government Exhibits 1 and 2. (*Id.* at 30).

### III.   MOTION TO SUPPRESS EVIDENCE

By his Motion to Suppress Evidence, Defendant contends that Officer Hess did not possess reasonable suspicion to perform a *Terry* frisk and further argues that Officer Hess exceeded the *Terry* frisk's scope by removing the bag of alleged cocaine from his pocket. (*See generally* Docket Nos. 33, 34, 54). According to Defendant, any evidence subsequently seized, which includes cocaine, fentanyl, a small amount of marijuana, $1,638 in United States currency and two cell phones, should be suppressed as fruit of the poisonous tree. (*See id.*). The Government counters that no Fourth Amendment violation occurred because the traffic stop was lawful; a *Terry* frisk was warranted given Defendant's non-compliant and suspicious conduct coupled with Officer Hess' knowledge, training and experience; the seizure of cocaine from Defendant's pocket was lawful; consequently, Defendant's arrest and the seizure of all additional evidence that followed was legal. (*See generally* Docket Nos. 44 at 7-19; 55; 56). For reasons that follow, the Court finds that suppression of the evidence seized from Defendant's person and vehicle on March 25, 2021 is not warranted because no Fourth Amendment violation occurred.

---

phones, but rather contends that information contained in the affidavits in support of search warrants for the cells phones is fruit of the poisonous tree because the information was retrieved "from the point of the pat-down," which Defendant argues was illegal. (Docket No. 52 at 27-28, 45).

### A. **Legal Standard**

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. CONST. amend. IV. In order to suppress evidence, the defendant has the burden of establishing that his Fourth Amendment rights were violated. *United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992). "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citation omitted). The burden of proof is preponderance of the evidence. *United States v. Mastronardo*, 987 F. Supp. 2d 569, 575 (E.D. Pa. 2013) (citing *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974)).

Here, it is undisputed that law enforcement searched Defendant and arrested him without a warrant. Therefore, it is the Government's burden to show by a preponderance of the evidence that the initial stop and *Terry* frisk of Defendant and the subsequent search of his person following his arrest were reasonable. For reasons that follow, the Court finds that the Government has sustained its burden.

### B. **The Traffic Stop Was Lawful**

The Fourth Amendment permits a traffic stop based on reasonable suspicion that a traffic violation has occurred regardless of the officer's subjective motivations for making the stop. *See United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006) ("[T]he . . . reasonable suspicion standard applies to routine traffic stops."); *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) ("[T]he Supreme Court established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime."). Therefore, "a traffic stop will be deemed a reasonable 'seizure' when an objective review

of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *Delfin-Colina*, 464 F.3d at 398. Moreover, "an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place." *Id.*

The police have reasonable suspicion justifying a traffic stop when a vehicle has dark tinted windows in violation of Pennsylvania law. *See United States v. Johnson*, 452 F. App'x 219, 225 (3d Cir. 2011); *United States v. Gooch*, 915 F. Supp. 2d 690, 704 (W.D. Pa. 2012) (finding vehicle stop was based on reasonable suspicion where trooper who was experienced in highway interdiction credibly testified that he observed heavy tint on driver's side windows as the vehicle passed him going the speed limit even though he was in a minimally lit area at night time). Driving with a suspended license in violation of state law also provides reasonable suspicion to make a traffic stop. *See United States v. Cottman*, 497 F. Supp. 2d 598, 603 (D. Del. 2007) (officer had reasonable suspicion of a violation of Delaware statute prohibiting operating a vehicle with a suspended license to support vehicle stop where officer had prior knowledge that driver of vehicle had a suspended license, and officer confirmed that the driver's license was suspended through a computer check before initiating the stop).

Here, Officer Hess' testimony establishes that he reasonably believed the window tint on the vehicle driven by Defendant violated Pennsylvania law. While on stationary patrol, Officer Hess observed a black Lincoln MKZ with heavily tinted windows, which prevented him from seeing inside the vehicle from his position.[7] (Docket No. 52 at 13). Officer Hess explained that

---

[7]     Defendant "takes some issue" with Officer Hess' observation of dark window tint given that the events in question occurred at approximately 1:40 a.m. (Docket No. 54 at 13). Consequently, Defendant "assumes, but does not concede that Officer Hess may have had reasonable suspicion to conduct a traffic stop based on his perception of illegally tinted windows." (*Id.*). Despite Defendant's position, Officer Hess' testimony concerning dark window tint

window tint which prevents him from seeing occupants inside of the vehicle is a violation of the Motor Vehicle Code. (*Id.* at 14). On that basis alone, Officer Hess had reasonable suspicion to conduct a traffic stop of the vehicle. Officer Hess also testified that he ran the registration plate of the vehicle as it passed his location, and learned that the vehicle's owner, who was identified as Defendant, had a suspended driver's license, (*id.* at 14, 32), which is also a violation of the Motor Vehicle Code. The Court accepts as credible Officer Hess' testimony concerning the dark window tint and the suspended driver's license and concludes that the traffic stop was lawful because it was based on Officer Hess' reasonable suspicion that he observed two traffic violations.

A traffic stop that is lawful at its inception "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). As the Supreme Court has explained, while an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). A traffic stop is unreasonably extended when an officer, without reasonable suspicion, diverts from a stop's traffic-based purpose to investigate other crimes. *Id.* at 354-55; s*ee also United States v. Green,* 897 F.3d 173, 179 (3d Cir. 2018). However, an officer may "expand the scope of a traffic stop and detain the vehicle and its occupants for further investigation if [the officer] 'develops a reasonable, articulable suspicion of criminal activity.' " *United States v. Frierson*, 611 F. App'x 82, 85 (3d Cir. 2015) (quoting

---

was unimpeached at the suppression hearing, and the Court finds Officer Hess' testimony on this point credible, given that he viewed the events in real time and is experienced in spotting vehicle code violations.

For similar reasons, the Court credits Officer Hess' testimony that he observed Defendant slip a plastic bag into his right pocket as Officer Hess approached the vehicle, despite Defendant's position that Officer Hess' observation is not supported by the body camera footage. (Docket No. 54 at 13). As stated, Officer Hess viewed the events in real time with the benefit of illumination from his flashlight, which he held above his shoulder, whereas his body camera was not at eye level, but rather positioned slightly underneath his left breast pocket. (Docket No. 52 at 19, 32-33).

*United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)).

Reasonable suspicion is based on the totality of the circumstances, *i.e.*, "the whole picture." *Green*, 897 F.3d at 184 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). In this case, from the moment Officer Hess first approached Defendant's vehicle, reasonable suspicion developed to extend the stop beyond the traffic violations that initiated it.[8]  As Officer Hess approached the right bumper/trunk area of Defendant's vehicle, he shined his flashlight toward it,[9] he could see Defendant's right hand through the seats, and he observed Defendant slip a clear plastic bag containing a white substance into his right pants pocket.  (Docket No. 52 at 19-20, 33, 40, 41).  Based on his training and experience, Officer Hess knew that narcotics typically are packaged in clear plastic bags and that the white substance may have been some type of narcotic. (*Id.* at 20).  As Officer Hess was approaching the vehicle, he also observed Defendant's left hand reaching down toward the door on his left side, but he could not exactly see what Defendant was doing.  (*Id.* at 20-21, 37).   After Officer Hess knocked on the vehicle's window, he observed Defendant continue to reach down with his left hand, but he still could not see what Defendant was doing. (*Id.* at 21).  Officer Hess ordered Defendant multiple times to place his hands on the steering wheel, but Defendant did not immediately follow those commands.  (*Id.*; Ex. B at 01:02-01:16).  Given his training and experience, Officer Hess was concerned that Defendant may have been concealing or retrieving a weapon, thus he drew his firearm and again ordered Defendant to

---

[8]     Although Defendant mentions that Officer Hess suspected he violated the Pennsylvania Motor Vehicle Code, but instead "extended the interaction into an illegal search and arrest," (Docket No. 54 at 15), he primarily argues that Officer Hess did not have reasonable suspicion that he was armed and dangerous, therefore the *Terry* frisk was unlawful.   (Docket No. 54 at 11-14).

[9]     An officer shining a flashlight into the interior of a vehicle from a position outside the vehicle does not violate the Fourth Amendment.  *See Texas v. Brown*, 460 U.S. 730, 739-40 (1983) ("It is likewise beyond dispute that Maples' action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment.").

place his hands on the steering wheel, but even then Defendant did not fully comply.  (Docket No. 52 at 21-22; Ex. B at 01:30-01:48).  These observations by Officer Hess, combined with his knowledge that Defendant had prior drug and firearm arrests and the fact that the traffic stop occurred at a late hour in a high crime area, (Docket No. 52 at 13, 15), were sufficient to establish reasonable suspicion that Defendant either possessed narcotics or a weapon, or both.  Under these circumstances, the Court finds that there was no unlawful extension of the initially valid traffic stop.

**C.  Officer Hess Had Reasonable Suspicion to Conduct a *Terry* Frisk of Defendant**

According to Defendant, "[r]egardless of whether the initial traffic stop of [his] vehicle was legal, the subsequent pat-down *Terry* frisk was not based on the requisite level of reasonable suspicion" that he was armed and dangerous.  (Docket No 54 at 11, 13, 14).  The Court disagrees.

"Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies."  *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010) (citations omitted).  One exception to the warrant requirement is a *Terry* stop and frisk.  The Supreme Court held in *Terry v. Ohio*, 392 U.S. 1, 27 (1968), that a police officer is permitted, consistent with the Fourth Amendment,  to conduct a reasonable search for weapons for his own protection "where he has reason to believe that he is dealing with an armed and dangerous individual."  A pat-down for weapons is permissible where the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  *Id.* at 21.  Importantly, an "officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27.

13

The Supreme Court has extended *Terry's* principles to traffic stops.  "To justify a patdown of the driver or a passenger during a traffic stop . . . the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."  *Arizona v. Johnson*, 555 U.S. 323, 327 (2009); *see also Michigan v. Long*, 463 U.S. 1032, 1047-48 (1983) ("[P]olice may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous.") (citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977)).

To reiterate, in analyzing whether there was an objective basis for reasonable suspicion, we are to consider the totality of the circumstances, *i.e.*, "the whole picture."  *Green*, 897 F.3d at 184.  To that end, reasonable suspicion may be the result of any combination of one or several of the following factors: "specialized knowledge and investigative inferences," "personal observation of suspicious behavior," "information from sources that have proven to be reliable, and information from sources that—while unknown to the police—prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within that tip." *United States v. Brown*, 448 F.3d 239, 247 (3d Cir. 2006) (citations omitted).

The Court concludes that Defendant's suspicious and non-compliant behavior, coupled with Officer Hess' specialized knowledge and investigative inferences, provided an objective basis for reasonable suspicion which justified a *Terry* frisk.  The Supreme Court and the Third Circuit Court of Appeals have identified the following factors as suggesting suspicious behavior: (1) the presence of a suspect in a high crime area; (2) a suspect's presence on a street at a late hour; (3) a suspect's "nervous, evasive behavior," or flight from police; and (4) a suspect behaves in a way that conforms to an officer's specialized knowledge of criminal activity.  *Brown*, 448 F.3d at 251 (citations omitted).  All four of these factors are present here.

As Officer Hess testified, the traffic stop of Defendant's vehicle occurred at 1:40 a.m. in a high crime area, where he previously had made firearm and drug-related arrests. (Docket No. 52 at 12-13).   Officer Hess also observed Defendant exhibit suspicious, evasive behavior, which conformed to Officer Hess' knowledge of criminal activity based on his training and experience. To summarize again, Officer Hess observed  Defendant slip a clear plastic bag containing a white substance into his right pants pocket, which Officer Hess recognized as consistent with narcotics packaging. In addition, Defendant kept reaching down with his left hand toward the door on his left side, and he did not immediately follow Officer Hess' multiple commands to place his hands on the steering wheel, even after the officer drew his firearm.   In light of Officer Hess' training and experience, he was concerned that Defendant may have had a firearm given his furtive hand movements and non-compliant behavior.   Considering the totality of the circumstances, Officer Hess' observation of Defendant's suspicious and non-compliant behavior, informed by his training and experienced, provided him with reasonable suspicion to conduct a *Terry* frisk.[10]   *See United States v. Murray*, 821 F.3d 386, 393 (3d Cir. 2016) (finding that suspected involvement in drug dealing provided reasonable suspicion that the defendant was armed) (citing *United States v. Binion*, 570 F.3d 1034, 1039 (8th Cir. 2009) ("An officer's reasonable belief that someone is involved in drug dealing can support a suspicion that the person is armed since weapons are often present incident to the drug business.")); *United States v. Moorefield*, 111 F.3d 10, 14 (3d Cir. 1997) (finding that "furtive hand movements and refusal to obey the officers' orders constituted suspicious behavior" which warranted pat-down); *United States v. Broadus*, 291 F. App'x 486,

---

[10]    Defendant contends that Officer Hess' testimony concerning Defendant reaching with his left hand is not credible because no weapon was found in the left driver's side door, thus there was no basis for reasonable suspicion that he was armed and dangerous.  (Docket Nos. 34 at 9; 54 at 13-14).  The fact that no weapon was found does not discredit Officer Hess' testimony, nor is it dispositive for purposes of determining whether reasonable suspicion existed because an officer need only have "a reasonable belief that a person is armed and dangerous. . . . The officer does not need to be certain that the person is armed."  *United States v. Wallace*, 450 F. App'x 175, 177 (3d Cir. 2011) (citing *Terry*, 392 U.S. at 27).

489 (3d Cir. 2008) (finding reasonable suspicion existed where, among other factors, defendant in car was "continually moving his left arm and hand to his left side . . . even though [the officer] had asked him to keep his hands in view").

### D. Officer Hess Did Not Exceed the Scope of the *Terry* Frisk When He Seized Narcotics From Defendant's Pocket

Even assuming the *Terry* frisk was lawful, Defendant argues that Officer Hess exceeded its scope when he removed the alleged cocaine from Defendant's pocket. (Docket No. 54 at 11, 14-15). According to Defendant, he could not have secreted a weapon in his right change pocket because it is very small, and the powder removed from his pocket weighed .3 grams, therefore it would have been impossible for Officer Hess to feel that amount of powder in a change pocket.[11] (*Id.* at 14). Conversely, the Government contends that the seizure of cocaine from Defendant's pocket was lawful pursuant to the plain feel doctrine.[12] (Docket No. 55 at 14-16). As next discussed, the Court finds that Officer Hess' *Terry* frisk did not exceed its permissible scope when he seized the bag of narcotics from Defendant's pocket.

In *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993), the Supreme Court held that police officers may seize non-threatening contraband detected during a protective pat-down search "so long as the officers' search stays within the bounds marked by *Terry*." The Third Circuit Court of Appeals has since defined the scope of a "plain feel" search under *Dickerson* and explained that the proper question "is not the immediacy and certainty with which an officer knows an object to

---

11      Despite Defendant's position, the Court finds Officer Hess' testimony credible on these matters. Based upon Officer Hess' training and experience relative to narcotics investigations and arrests, the Court credits his testimony that the feel of the packaged powder in Defendant's change pocket was immediately apparent to him. (Docket No. 52 at 11-12, 23, 41-42, 43). Furthermore, given that Officer Hess has conducted hundreds of traffic stops, the Court also credits his testimony that a small knife could be concealed in a change pocket. (*Id.* at 12, 39).

12      The Government also contends that the seizure of cocaine from Defendant's pocket was lawful under the plain view exception to the Fourth Amendment. (Docket No. 55 at 12-14). As discussed herein, the Court finds that Officer Hess had probable cause to seize the bag of narcotics from Defendant's pocket under the plain feel doctrine, therefore it need not address the Government's plain view argument.

be contraband or the amount of manipulation required to acquire that knowledge, but rather what the officer believes the object is by the time he concludes that it is not a weapon." *United States v. Yamba*, 506 F.3d 251, 259 (2007). An officer "is allowed to slide or manipulate an object in a suspect's pocket, consistent with a routine frisk, until the officer is able reasonably to eliminate the possibility that the object is a weapon." *Id.* "If, before that point, the officer develops probable cause to believe, given his training and experience, that an object is contraband, he may lawfully perform a more intrusive search," *id.*, and will be justified in seizing any contraband he discovers. *See Dickerson*, 508 U.S. at 375-76. "If, however, the officer 'goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed.'" *Yamba*, 506 F.3d at 259 (quoting *Dickerson*, 508 U.S. at 373).

Here, under the totality of the circumstances, the Court is satisfied that Officer Hess had probable cause to believe that the object he felt in Defendant's pocket was contraband before he determined it was not a weapon. Prior to performing a *Terry* frisk of Defendant, Officer Hess had observed Defendant slip a clear plastic bag containing a white substance into his right pants pocket. (Docket No. 52 at 19-20, 33, 40, 41). Based on his training and experience, Officer Hess knew that narcotics typically are packaged in clear plastic bags, and he thought that the white substance may have been some type of narcotic. (*Id.* at 20). When Officer Hess patted Defendant's right pocket during the *Terry* frisk, he immediately felt in his right change pocket, without manipulating it, a small amount of a powder substance, which he believed to be "some sort of narcotic." (*Id.* at 23, 41-42, 43). Officer Hess removed the plastic bag which contained a white powder substance from Defendant's right pocket, he patted the pocket again to verify that Defendant had no weapons, found a small amount of marijuana, completed the pat-down, and then placed Defendant under arrest. (*Id.* at 24-25). As in *Yamba*, Officer Hess' belief that the object he felt in Defendant's

17

pocket  was a narcotic "was reached quickly and upon minimal manipulation of [Defendant's] pocket from the outside, consistent with a routine frisk allowed by *Terry*." *Yamba*, 506 F.3d at 260.[13]  Based upon Officer Hess' experience and training, he was able to identify the object as contraband within the bounds of *Terry* and was permitted to seize it.  *See United States v. Goode*, 486 F. App'x 261, 264 (3d Cir. 2012) (officer was able to determine that object in defendant's pocket was narcotics based on experience); *Johnson*, 452 F. App'x at 226 (holding that seizure of crack cocaine from defendant's pocket did not exceed scope of *Terry* frisk).  Accordingly, the Court is convinced that the pat-down search of Defendant was supported by reasonable suspicion and did not exceed the scope of a lawful *Terry* frisk.

### E.  The Warrantless Arrest of Defendant and Search of His Person Incident Thereto Were Lawful

Following the discovery of suspected cocaine on Defendant's person, Officer Hess lawfully arrested him without a warrant.  "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *United States v. Watson*, 423 U.S. 411, 424 (1976); *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) (stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender")).  In this instance, the Court concludes that Officer Hess had probable cause to arrest Defendant after he felt and recovered a bag of what Officer Hess recognized as cocaine based on his training and experience.  At that point, Officer Hess had

---

13       In *Yamba*, probable cause existed when the officer felt "a plastic bag containing a soft[,] spongy-like substance."  506 F.3d at 260 (alteration in original) (internal quotation marks omitted). Although the bag could have contained "grass or oregano," *id.* (footnote omitted), the officer did not need to be absolutely certain that he located marijuana.

reasonable grounds to believe that Defendant had illegally possessed a controlled substance, which provided ample probable cause to arrest him.

After making a lawful arrest, the police may conduct a warrantless search incident to the arrest to secure weapons and to prevent the concealment or destruction of evidence. *United States v. Robinson*, 414 U.S. 218, 234-35 (1973). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.* at 235. Accordingly, the search of Defendant following his arrest and the seizure of suspected heroin from his groin area and United States currency were lawful.

## IV.    MOTION TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH WARRANTS

Defendant next moves to suppress all evidence seized from two cell phones pursuant to search warrants. (*See* Docket No. 37). Defendant initially argued in this Motion that the affidavits of probable cause in support of the search warrants for the cell phones lacked sufficient probable cause. (Docket No. 38 at 1). At the hearing, however, defense counsel clarified that Defendant's argument concerning the cell phones is that "information contained in the affidavit of probable cause [is] fruit of the poisonous tree." (Docket No. 52 at 27); (*see also id.* at 45) (reiterating that Defendant's argument on the search warrants is that "all the information in the affidavit was derived through a chain that started with the illegal search. . . . It's fruit of the poisonous tree."). As refined, Defendant's argument is that any evidence seized pursuant to the warrants should be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

As the Court has found no constitutional violation related to the *Terry* frisk of Defendant, any evidence seized or information gleaned from the events that followed was lawfully obtained.

19

Consequently, there is no basis to suppress any evidence seized from the execution of the two search warrants for Defendant's cell phones to the extent they were issued based on any such evidence or information, and no further analysis is needed on this issue.

## V.    MOTION TO SUPPRESS STATEMENTS

Defendant argues in his Motion to Suppress Statements that he made incriminating statements to the police while he was in custody without having received a *Miranda* warning, thus all such incriminating statements he provided in this case should be suppressed.  (*See* Docket No. 35).  The Government responds that it does not plan to introduce any of Defendant's statements in its case-in-chief at trial with two exceptions: (1) Defendant's request for his cell phones after his formal arrest; and (2) his statement, "f*ck, man" when he was alone in the patrol vehicle.  (Docket No. 44 at 20).  According to the Government, there is no Fifth Amendment violation as to these statements because Defendant made them spontaneously and voluntarily.  (*Id.*).  Here, the Court finds that the Government has sustained its burden of establishing by a preponderance of the evidence that *Miranda* was not implicated as to the two statements in question.  *See United States v. Valenta*, Crim. No. 15-161, 2017 WL 2131375, at *4 (W.D. Pa. May 17, 2017) (" . . . [T]he government must prove by a preponderance of the evidence that there was no custodial interrogation implicating *Miranda*, there was some exception to the *Miranda* rule, or ... [the defendant] ... was properly *Mirandized* and waived his rights.") (internal quotation marks and citation omitted).

A defendant who "has been taken into custody or otherwise deprived of his freedom of action in any significant way" must be given the warnings prescribed in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Under *Miranda*, "a statement made by a suspect in response to custodial interrogation after he or she has elected to remain silent is inadmissible at trial." *United States v.*

*Brownlee*, 454 F.3d 131, 146 (3d Cir. 2006).  However, "the special procedural safeguards outlined in *Miranda*" are required only where a suspect is taken into custody and "subjected to interrogation."  *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).  Interrogation means "express questioning or its functional equivalent . . . any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Brownlee*, 454 F.3d at 146 (quoting *Innis*, 446 U.S. at 300-01).  "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."  *Innis*, 446 U.S. at 299-300 (quoting *Miranda*, 384 U.S. at 478).  Accordingly, "[u]nder *Miranda* and its progeny, . . .  spontaneous utterances are clearly admissible, even when the suspect is in custody, because there is no 'interrogation.' "  *United States v. Coates*, 457 F. Supp. 2d 563, 570 (W.D. Pa. 2006).

Defendant already was placed under arrest and was in custody when he requested his cell phones and later when he stated, "f*ck, man."  However, the record reflects that he was not subject to express questioning by police, or its functional equivalent, when he made those two statements.  Defendant's request for his cell phones was unprompted and was not made in response to any statements or questions by the police, and he spontaneously stated, "f*ck, man" while sitting alone in the back seat of the patrol vehicle.  (Docket No. 52 at 26; Ex. B at 04:32-04:46; Ex. D at 14:15).  Suppression of these spontaneous statements is not warranted because there was no police interrogation, and Defendant's Motion will be denied as to the two statements.  Defendant's Motion otherwise will be denied as moot, given that the Government does not intend to introduce any other statements by Defendant in its case-in-chief at trial.

VI.     **CONCLUSION**

The traffic stop, *Terry* frisk, arrest and subsequent search of Defendant, and all evidence seized on March 25, 2021, did not violate the Fourth Amendment.  Additionally, Defendant's spontaneous statements requesting his cell phones and stating an expletive while seated alone in a patrol vehicle were not the product of interrogation by the police, thus there is no Fifth Amendment violation with respect to those statements.  Accordingly, Defendant's Motion to Suppress Evidence, Motion to Suppress Statements, and Motion to Suppress Evidence Obtained From Search Warrants (Docket Nos. 33, 35, 37) are DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:  October 5, 2022

cc/ecf:  All counsel of record